1 | THOMAS P. O'BRIEN
United States Attorney
2 | CHRISTINE C. EWELL
Assistant United States Attorney
3 | Chief, Criminal Division
STEVEN R. WELK
4 | California Bar No. 149883
Assistant United States Attorney
5 | Chief, Asset Forfeiture Section
   Federal Courthouse, 14th Floor
6 |    312 North Spring Street
   Los Angeles, California 90012
7 |    Telephone:  (213) 894-6166
   Facsimile:  (213) 894-7177
8 |    E-mail: Steven.Welk@usdoj.gov

9 | Attorneys for Plaintiff
United States of America

10 |

11 | UNITED STATES DISTRICT COURT

12 | FOR THE CENTRAL DISTRICT OF CALIFORNIA

13 | WESTERN DIVISION

14 | UNITED STATES OF AMERICA,  )    CV09-01731 SVW (JWJx)

15 |    )  NO.

16 |    Plaintiff,  )  **VERIFIED COMPLAINT FOR FORFEITURE**

17 |    v.  )

18 | $1,802,651.56 IN FUNDS  )  [18 U.S.C. § 981(a)(1)(A) and
SEIZED FROM E-BULLION; AND  )  (C)]
$5,017,021.50 and VARIOUS  )

19 | ITEMS OF PERSONAL PROPERTY  )  [F.B.I.]
SEIZED FROM GOLDFINGER  )

20 | COIN & BULLION, INC.,  )

21 |    Defendants.  )

22 | _____)

23 |

24 |    For its claim against the defendant assets, described more

25 | specifically below, the United States of America alleges:

26 |

27 |

28 |

## JURISDICTION AND VENUE

1.   This is a civil forfeiture action brought pursuant to 18 U.S.C. § 981(a).

2.   This court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

3.   Venue lies in this district pursuant to 28 U.S.C. § 1395(b).

## PERSONS AND ENTITIES

4.   The plaintiff in this action is the United States of America.

5.   The defendants are:

a.   $1,802,651.56 seized on May 11, 2006 from an account held by e-Bullion, Inc. ("e-Bullion") in the name or for the benefit of Kum Ventures, Inc. (aka Kum Holdings).  E-Bullion was affiliated with or under common control with Goldfinger Coin and Bullion, Inc. ("GCB") and Goldfinger Bullion Reserve Corporation ("GBRC") (these latter entities, together with the individual who controlled them [James Michael Fayed], are sometimes referred to collectively herein as "Goldfinger").

b.  $1,894,559.69 seized on August 12, 2008 from Bank of America ("BofA") account no XXXXX-X7358 in the name of GCB, for which James Michael Fayed ("Fayed") had signature authority. ("BofA 7358").[1]

/ / /

---

[1]   The full account numbers have been redacted pursuant to Local Rule 79-5.4.

c. $8,715.62 seized on August 14, 2008 from BofA account no XXXXX-X7356 in the name GCB, for which Fayed had signature authority. ("BofA 7356").

d.  $37,303.36 seized on August 14, 2008 from Wells Fargo Bank ("WFB") account no XXX-XXX5942 in the name of GCB, for which Fayed had signature authority. ("WFB 5942").

e.  $70,810.88 seized on August 14, 2008 from WFB account no XXX-XXX3735 in the name of GCB, for which Fayed had signature authority. ("WFB 3735").

f  $560,680.07 seized on August 14, 2008 from BofA account no XXXXX-X1905 in the name of GCB, for which Fayed had signature authority. ("BofA 1905").

g.  $2,279,111.69 seized on August 14, 2008 from BofA account no XXXXX-X9713 in the name of GCB, for which Fayed had signature authority. ("BofA 9713").

h.  $165,840.19 seized on September 11, 2008 from BofA account no XXXXX-X7355 in the name of GCB, for which Fayed had signature authority. ("BofA 7355").

i.  the currency and items of personal property seized from Goldfinger listed in exhibit A (which is hereby incorporated by reference as though set forth in full at this point), seized pursuant to federal search warrants in August 2008.

6.    The defendants were seized in this district on the dates indicated above by Special Agents of the Federal Bureau of Investigation ("FBI") and Internal Revenue Service ("IRS").  The defendants are presently in the custody of the United States

1 | Marshals Service and the FBI, where they will remain subject to
2 | the court's jurisdiction during the pendency of this action.
3 |     7.    GCB is a Delaware Corporation incorporated in or about
4 | 2001.  Fayed is the president and treasurer; Pamela Fayed
5 | (Fayed's spouse, who was killed in 2008 in an ambush murder for
6 | which Fayed has been charged) was the vice-president and
7 | secretary.
8 |     8.    GBRC is a Delaware Corporation which was incorporated
9 | on February 23, 2001.  Fayed is the president and treasurer;
10 | Pamela Fayed was the vice-president and secretary.
11 |     9.    E-Bullion was an online service that offered, among
12 | other things, to transfer money for a fee.  It operated from a
13 | website called called www.e-Bullion.com, as well as from offices
14 | at 1330 Flynn Road, Camarillo, California.  The website
15 | represented that "The e-Bullion Company is a Panama Corporation
16 | wholly owned by Goldfinger Bullion Reserve Corporation."
17 |     10.  The defendants were seized from GCB, GBRC and/or its
18 | primary owner/operator, Fayed.  The interests of GCB, GBRC, Fayed
19 | and Kum Ventures may be affected by these proceedings.  On
20 | February 26, 2008, a federal grand jury in this district indicted
21 | Fayed and GCB (case no. 08-00224-PSG) for violation of 18 U.S.C.
22 | Section 1960.
23 | <u>LEGAL BASES FOR FORFEITURE</u>
24 |     11.  Based upon the facts set out herein, plaintiff alleges
25 | that the defendants are subject to forfeiture to the United
26 | States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) on the
27 |
28 | 4

grounds that: (a) the defendants were involved in multiple

violations of 18 U.S.C. § 1960 (operation of an unlicensed money

transmitting business), and are therefore subject to forfeiture

pursuant to 18 U.S.C. § 981(a)(1)(A); (b) the defendants

represent or are traceable to proceeds of multiple violations of

18 U.S.C. § 1343 (wire fraud) and/or § 1341 (mail fraud), and are

therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)

(C); and (c) the defendants were involved in multiple

transactions in violation of 18 U.S.C. § 1956(a)(1)(A) (promotion

money laundering), (a)(1)(B) (concealment money laundering),

(a)(2) (international transfer of funds to promote specified

unlawful activity), and 18 U.S.C. § 1957, and are therefore

subject to forfeiture pursuant to 18 U.S.C. § 981 (a)(1)(A).

FACTS SUPPORTING FORFEITURE

The Illegal Money Transmitting Business

12.   Title 18, United States Code, Section 1960 makes it a

crime to knowingly conduct, control, manage, supervise, direct or

own all or part of an unlicensed money transmitting business.  An

unlicensed money transmitting business is defined as one which

affects interstate or foreign commerce in any manner or degree

and (a) is operated without an appropriate license in a state,

such as California, where such operation is punishable under

state law; (b) is not in compliance with the money transmitting

business registration requirements under 31 U.S.C. § 5330, or the

regulations promulgated thereunder; or (c) otherwise involves the

transportation or transmission of funds that are known by the

1  transmitter to have been derived from a criminal offense or are
2  intended to be used to promote or support unlawful activity.
3      13.  Money transmitting is defined as transferring funds on
4  behalf of the public by any and all means, including transfers
5  within the U.S. or internationally by wire, check, facsimile or
6  courier.
7      14.  The e-Bullion website described its "e-currency" as "an
8  electronic currency that is tied directly to a particular
9  national currency (e.g. U.S. Dollars), and the value does not
10 fluctuate with spot metal prices."
11     15.  GCB handled the funds for e-Bullion through its bank
12 accounts, including some of the accounts from which portions of
13 the defendant funds were seized.  According to the website for
14 GCB (www.goldfingercoin.com), "Goldfinger Coin & Bullion Sales
15 provides a service to allow electronic purchases of Bullion
16 (precious metals) for funding your e-currency account."
17     16.  GCB, GBRC, e-Bullion, Fayed and others working in
18 concert with them held and controlled numerous domestic bank
19 accounts, and engaged in multiple monetary and financial
20 transactions on behalf of members of the public affecting
21 interstate commerce, in violation of § 1960.  In addition, they
22 knowingly facilitated and participated in the interstate and
23 international receipt and transfer of millions of dollars in
24 funds from schemes which they knew to be fraudulent, with the
25 intent to promote illegal activity and conceal the
26 / / /
27
28                                  6

1   nature, source, location, control and ownership of proceeds of

2   unlawful activity, in violation of 18 U.S.C. §§ 1956 and 1957.

3       17.   E-Bullion and Goldfinger provided money transmitting

4   and purported investment services and products to the public.

5   All of the services offered by e-Bullion and Goldfinger involved

6   money transmission.   Some services were purportedly solely for

7   investment in precious metals, while others were purportedly

8   solely for "investment" in non-precious metal products.   The

9   government alleges on information and belief that the monies

10  transferred by the public to e-Bullion and Goldfinger were

11  commingled by Fayed and others acting in concert with them

12  without regard to the intended purpose of the transferors.

13  Moreover, Fayed and others knowingly accepted proceeds of fraud

14  schemes through e-Bullion and Goldfinger and commingled funds

15  with fraud proceeds through, among other things, multiple

16  transfers among domestic bank accounts.   The items listed in

17  exhibit A were involved in these transfers and are alleged to

18  represent or be traceable to funds involved in the illegal money

19  transmitting business.

20      18.   On the website for e-Bullion.com, the following

21  representations were set out:

22          e-Bullion is instant, real-time currency for
            international commerce.   In just minutes, you can send
23          and receive irrevocable payments from anyone, anywhere
            on the globe!.   e-Bullion is the true global currency
24          for a global world economy. It has unlimited potential
            and is as fluid and flexible as your imagination.
25
    / / /
26
    / / /
27

28                              7

The e-Bullion.com web site further represented

> True "global currency" is here at last. Now you can put
> the world at your fingertips with your new e-Bullion
> Debit Card!  It takes just a few minutes to complete
> the simple online application. Click here to apply for
> your card now. (Requires e-Bullion Account sign in).

> Your new e-Bullion debit card will allow you to
> leverage ATM & Point of Sale (POS) money systems
> anywhere in the world! Your card will work with Plus,
> Star, Pulse, Interlink, NYCE and Mac.

> "ANONYMOUS & NUMBERED" A numbered only debit card
> increases your security. (Branded Visa cards will be
> available in the near future.)

19.  In February 2006, Fayed was interviewed by the FBI concerning Goldfinger, and asked specifically whether e-Bullion was a money transmitter, which would require it to be licensed in order to operate pursuant to 18 U.S.C. § 1960 and California law. Fayed did not claim that he and the businesses he operated were not money transmitting businesses, but that he was exempt from applicable licensing requirements because he had received a letter from the U.S. Treasury Department which stated that precious metals businesses were not money transmitters subject to licensing.

20.  The government does not send the sort of letters claimed to have been received by Fayed from the Treasury Department, and there is no such record that a letter was provided to him either by the IRS or the U.S. Treasury Department.

21.  In April 2006, the State of California Department of Financial Institutions confirmed that neither Fayed, GCB, GBRC, nor e-Bullion.com had ever been licensed to transmit money, nor

1  were any of them approved as agents of a licensed money

2  transmitting business in California.

3       22.  In May 2008, the IRS certified that neither GCB, GBRC,

4  e-Bullion, James Fayed nor Pamela Fayed had ever been registered

5  or authorized to function as a money transmitting business.

6       23.  Nevertheless, beginning at a time unknown and

7  continuing through August 2008, Fayed and the Goldfinger entities

8  knowingly conducted, controlled, managed, supervised, directed

9  and owned an unlicensed money transmitting business affecting

10  interstate and foreign commerce: (a) having failed to obtain an

11  appropriate money transmitting license under California Finance

12  Code §§ 1800.3(a) and 1823; (b) having failed to comply with the

13  money transmitting business registration requirements under 31

14  U.S.C. § 5330, and the regulations prescribed thereunder; and (c)

15  knowingly transporting or transmitting funds derived from a

16  criminal offense or which were intended to be used to promote or

17  support unlawful activity.

18       24.  GCB Wells Fargo account XXX-XXX4976 ("WFB 4976") was

19  the principal WFB account receiving outside deposits for GCB.

20  The deposits into the account were generally small in nature,

21  with many being for less than $100, or just a few hundred

22  dollars.  There are some deposits over $1,000, and a few of up to

23  $10,000.  This account was used primarily as a pass-through

24  account, with the vast majority of the deposits being

25  subsequently transferred to WFB account 5942, from which a

26  portion of the defendant funds were seized.  Of the approximately

27

28                                    9

$5,000,000 in withdrawals/debits during the period of analysis, approximately $5,000,000 was transferred to WFB 5942.

25.  Similar activity is observed in records for Goldfinger BofA account number XXXX-X-X4328 ("BofA 4328"), which was funded in part with cash deposits for which the depositors generally were not identified.  Like some of the deposits into WFB 4976, many of the cash deposits into BofA 4328 were made via Western Union, MoneyGram, or through Postal Money orders, and offered no information about the source of the funds.

26.  Of the approximately $5,000,000 in deposits into WFB 5942, $3.4 million was subsequently transferred to Palm Desert National Bank for the purchase and loading of cash value cards by the Royal Bank of Scotland Cash Lynk program.  Cash Lynk issues ATM-like access cards known as Cash Lynk cards which function like debit cards, but need not bear the true name of the holder. Approximately $500,000 was wired from WFB 5942 internationally. Approximately $400,000 more was transferred to GCB BofA account XXXXX-X7357 ("BofA 7357").

27.  Numerous Cash Lynk cards were acquired by Goldfinger for its clients bearing no identifying information relating to the purchasers or owners.  In many instances, the Cash Lynk cards acquired and distributed by Goldfinger bore only the words "CashLynk" and the account number.

33.  An analysis of Lynk Systems records revealed that more than $33,594,934 worth of "value-loaded" cards, which allow withdrawal of funds from ATMs around the world, were issued by

Lynk Systems on behalf of Goldfinger.  The following is a sampling of Lynk Systems cards issued to GCB customers with corresponding ATM withdrawals:

| First Name | Last Name | Amount Withdrawn |
|---|---|---|
| Freedom | Mountain | $109,995 |
| Flight Plan | 1000 | $218,636 |
| Travel | Cash | $195,304 |
| DBS | DBS | $10,443 |
| D | Golfer | $ 11,500 |
| KC | Gun | $149,007 |
| Null | Null | $995,048 |
| Payday | Profits | $41,858 |
| J | Pul | $50,046 |
| Roop | Rupi | $58,756 |
| Global | Synthesis | $19,534 |
| USZ-3 | USZ-3 | $113,858 |
| New World | Technology | $397,118 |
| CPI | XXX | $14,725 |
| Total | | $ 2,385,828 |

28.  The fund transfers among Goldfinger accounts were intended to conceal or disguise the nature, source, location, control and ownership of the monies used to fund the accounts, much of which appear to have been proceeds of mail or wire fraud. Indeed, some of the activity in the Goldfinger accounts appears to have been intended solely to accomplish such concealment.

/ / /

11

29.   BofA 7357 acted as a deposit account, which was immediately "swept" to BofA 7358.  During 2007 and early 2008, BofA 7356 (see ¶5(c)) was funded entirely from BofA 7358 (see ¶5(b)).  Money was then wire-transferred out of BofA 7356 in large amounts, usually around $100,000 to $200,000.  Monthly credits to BofA 7356 during that time were $3,000,000 to $4,000,000.  Monthly debits to the account tended to equal the amount of deposits, and appeared to be in the form of checks written to Goldfinger customers throughout the United States.  In June 2007, 1260 checks were written on BofA 7356.  The transfers of funds into BofA 7356 from BofA 7358 were usually large ($42,418 to $330,549), and occurred almost daily.

30.   BofA 7358 was also used to fund WFB account 3735, which received approximately $300,000 in transfers from BofA 7358.  Approximately $300,000 from WFB 3735 was paid to Paychex, a payroll service.

31.   BofA 7358 was also used to fund BofA 9713, from which a portion of the defendant funds was seized.  BofA 9713 was funded by and used to fund other Goldfinger accounts.  There were numerous electronic transfers between BofA 9713 and BofA 7358.  The transfers were usually large (between $100,000 and $985,000) and there were relatively few per month - for example, during June 2007, there were only five.  Between March 13 and April 22, 2008, the activity in BofA 9713 consisted entirely of online banking transfers among this account, BofA 7358 and BofA 1905.  The transfers were usually large ($66,500 to $965,000).  Only two

online banking transfers were credited to the account in March
2008 (both from BofA 7358), and one online banking transfer was
debited in April 2008 (to BofA 1905).

32. BofA 7358 was also used to fund BofA 1905, from which a
portion of the defendant funds was seized. BofA 1905 also
received funds from BofA 9713. The debits from BofA 1905 were
paid to American Express and Chase, listing James M. Fayed as the
beneficiary.

33. From January 2005 through February 2008, BofA 7355,
from which a portion of the defendant funds was seized (see
¶5(h)), was funded with approximately $6.7 million in transfers
from BofA 7358, which funds were then transferred back to BofA
7358. There were from one to fifteen transfers between the two
accounts per month, and this was essentially the only activity in
this account.

<u>e-Bullion and Kum Ventures</u>

34. From about October 2005 through about January 2006,
more than 1,000 victims from around the world were induced to
invest in a Ponzi scheme identified as Kum Ventures Inc., which
collected total "investments" of approximately $12,000,000.
These victims were solicited to invest in Kum Ventures through
High Yield Investment Program ("HYIP") "chat rooms" on the
Internet. Investors were falsely advised that they would receive
weekly returns of 10%, and that Kum Ventures had been paying this
return to investors for several years.

13

35.   Victims of the Kum Ventures Ponzi scheme were directed by scheme promoters and an Internet newsletter entitled newsletter@kum-holdings.com to invest in Kum Ventures by depositing money into accounts at either Bank of America or Wells Fargo Bank, and requesting that the funds be wire-transferred to GCB accounts at those banks.   Once the wire transfers to GCB were completed, the investors would receive, via the Internet, a confirmation that the money had been successfully transferred to GCB and ostensibly held for the benefit of Kum Ventures.

36.   Records from Bank of America and Wells Fargo reflect that Fayed was an authorized signor for the GCB accounts into which the funds of the Kum Ventures investors were transferred. Those records further reflect that approximately $12,000,000 of Kum Ventures investor funds were transferred to GCB bank accounts.   Those funds were then moved through other GCB accounts and commingled with other funds.   Ultimately, $6,000,000 of the commingled funds were wire-transferred to the First Curacao International Bank N.V. account of Kum Ventures, located in the Netherlands Antilles, usually in amounts of several hundred thousand dollars each.   Banks located in the Netherlands Antilles and similar "offshore" banking facilities are havens for fraud and money laundering.

37.   According to records for WFB 4976, between August 2005 and April 2006, there were 1,214 transactions in this account, including approximately $2,778,000 worth of cash deposits.   Many

/ / /

14

of the 1,214 cash transactions did not identify the depositor.
Numerous deposits were made through Western Union and Money Gram.

38.   While some of the Kum Ventures investors received "returns" on their investments, those returns were actually paid with funds provided by other, subsequent investors, and were made in order to lull the paid investors and create the appearance of promised investment returns.   Those payments ceased in or about January 2006 and most, if not all of the investors lost the entire balance of their principal investments.

39.   Victim interviews confirmed that victims wire-transferred monies directly into BofA 7357, which was a "swept" account, meaning that account funds were swept regularly from the account to BofA 7358.   Kum Ventures victims transferred money to BofA 7357 for the sole purpose of investing in Kum Ventures, and never intended to engage in any financial transaction related to gold or precious metals, nor to otherwise use any service offered by e-Bullion or GCB.

40.   Numerous Kum Ventures-related wire transfers were received into BofA 7357 and then transferred into BofA 7358.   As noted above, substantial amounts were wire-transferred from BofA 7358 to an account of persons believed to be the Ponzi operators of Kum Ventures at the First Curacao International Bank in the Netherlands Antilles.   Below are some examples of the wire transfers of funds from BofA 7358 to First Curacao:

|                    |          |
|--------------------|----------|
| October 31, 2005:  | $155,000 |
| November 2, 2005:  | $155,000 |

| | |
|---|---|
| November 3, 2005: | $300,000 |
| November 14, 2005: | $350,000 |
| November 16, 2005: | $300,000 |
| November 28, 2005: | $350,000 |
| December 5, 2005: | $600,000 |
| January 18, 2006: | $550,000 |
| January 23, 2006: | $450,000 |
| January 31, 2006: | $350,000 |

41.   Other investors transferred funds directly into WFB 4976.  These individuals appear not to have intended to engage in any financial transaction related to gold or precious metals, or to otherwise use any service offered by e-Bullion or GCB.  At least one investor who transferred money into WFB 4976 received a "return" paid out of BofA 7356.

42.   Based upon documentary evidence seized from Goldfinger and a storage locker rented by Pamela Fayed, plaintiff alleges that Fayed had actual knowledge that Kum Ventures was a fraudulent scheme, and that Fayed knowingly used e-Bullion, the Goldfinger entities and the bank accounts of those entities to facilitate and promote the fraud through, among other things, receipt of investor monies, transfer of those monies among Goldfinger accounts, which was also intended to conceal or disguise their nature, source, location, ownership and control, and the international transfer of those monies.

/ / /

/ / /

16

1 | <u>e-Bullion and Solid Investements</u>

2 | 43. In or about October 2006, the FBI opened an

3 | investigation into a similar Ponzi scheme known as "Solid

4 | Investments." Like victims of the Kum Ventures scheme, Solid

5 | Investments victims were directed by scheme promoters to transfer

6 | funds into Goldfinger accounts. Further investigation revealed

7 | that approximately 980 investors transferred approximately

8 | $11,900,000 into Goldfinger accounts in connection with the Solid

9 | Investments scheme between January and April 2006. Actual losses

10 | to investors in the Solid Investments fraud scheme is believed to

11 | exceed $4,000,000.

12 | **FIRST CAUSE OF ACTION**

13 | **(18 U.S.C. § 981(a)(1)(A)**

14 | 44. Based upon the facts set out herein, plaintiff alleges

15 | that the defendants, and each of them, are subject to forfeiture

16 | to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) on the

17 | ground that the defendants were involved in multiple violations

18 | of 18 U.S.C. § 1960 (operation of an unlicensed money

19 | transmitting business).

20 | **SECOND CAUSE OF ACTION**

21 | **(18 U.S.C. § 981(a)(1)(C))**

22 | 45. Based upon the facts set out herein, plaintiff alleges

23 | that the defendants, and each of them, are subject to forfeiture

24 | to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) on the

25 | ground that the defendants represent or are traceable to proceeds

26 |

27 |

28 | 17

of multiple violations of 18 U.S.C. § 1343 (wire fraud) and/or § 1341 (mail fraud).

### THIRD CAUSE OF ACTION

### (18 U.S.C. § 981(a)(1)(A))

46.  Based upon the facts set out herein, plaintiff alleges that the defendants, and each of them, are subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) on the grounds that the defendants were involved in multiple transactions in violation of 18 U.S.C. § 1956(a)(1)(A) (promotion money laundering), (a)(1)(B) (concealment money laundering), (a)(2) (international transfer of funds to promote specified unlawful activity), and 18 U.S.C. § 1957.

WHEREFORE, the United States prays that:

a.    due process issue to enforce the forfeiture of the defendants;

b.    due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

c.    judgment be entered declaring that the defendants are forfeited to the United States of America for disposition according to law;

d.    the United States be awarded all costs, expenses and disbursements; and

/ / /

/ / /

18

1          e.    The United States of America be awarded any other

2  and further relief that the Court deems just and proper.

3  DATED:  March 11, 2009

4                              THOMAS P. O'BRIEN
                               United States Attorney
5                              CHRISTINE C. EWELL
                               Assistant United States Attorney
6                              Chief, Criminal Division

7

8                              STEVEN R. WELK
                               Assistant United States Attorney
9                              Chief, Asset Forfeiture Section

10                             Attorneys for Plaintiff
                               United States of America

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>VERIFICATION</u>

I, Maura Kelley,  declare and say that:

1.   I am a Special Agent with the Federal Bureau of Investigation.

2.   I have read the attached Complaint for Forfeiture and know the contents thereof.

3.   The information contained in the Complaint is either known to me personally, was furnished to me by bank personnel, official government sources, or obtained pursuant to subpoena.  I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


EXECUTED this _____ day of March, 2009 at _____, California.

(see following page)

_____
SPECIAL AGENT MAURA KELLEY
FEDERAL BUREAU OF INVESTIGATION

20

## VERIFICATION

, Maura Kelley,  declare and say that:

I am a Special Agent with the Federal Bureau of
.. gation.

I have read the attached Complaint for Forfeiture and
.e contents thereof.

The information contained in the Complaint is either
.o me personally, was furnished to me by bank personnel,
.l government sources, or obtained pursuant to subpoena.  I
.rmed and believe that the allegations set out in the
.nt are true.

declare under penalty of perjury under the laws of the
l States that the foregoing is true and correct.

.ECUTED this ___11th___ day of March, 2009 at _____,
.n.a.

SPECIAL AGENT MAURA KELLEY
FEDERAL BUREAU OF INVESTIGATION

<u>EXHIBIT A</u>

Property seized fromGoldfinger Coin and Bullion
1330 Flynn, Camarillo, CA

(400) One Troy Ounce .999 Fine Silver Trade Unit
(1) Silver Colored Bar 68.40 lbs.
(1) Silver Colored Bar 67.85 lbs.
(4000) $1 U.S. Silver Dollars
(1) Silver Colored Bar 66.75 lbs.
(32) Gold Colored Bars 2.2 lbs. each
(5) 1 ounce Gold Colored Bars
(1) Silver Colored Bar 66.80 lbs.
(1) Silver Colored Bar 68.60 lbs.
(1) Silver Colored Bar 67.10 lbs.
(1) Silver Colored Bar 70.55 lbs.
(1) Silver Colored Bar 66.45 lbs.
(1) Silver Colored Bar 66.95 lbs.
(1) Silver Colored Bar 68.90 lbs.
($19,071.90) in dimes
(8) Silver Bars 6.85 lbs.
(2) Silver Bars 6.80 lbs.
($924.50) in half dollars
($13,399.75) in quarters
(1600) Franc Gold Coins
(150) 50 pesos Gold Coins
(50) 1 ounce Krugerrand
(4) Silver Bars 100 ounce
(50) Silver Coins 1 ounce
(500) Liberty Silver Coins 1 ounce
(650) Silver Buffalo 1 ounce
(95) Silver Coins 1 ounce
(60) Silver Trade Coins 1 ounce
(300) Silver Buffalo 1 ounce
($399) US Silver Dollar Coins
(1) Container Casting Grain 150 ounces .9999 Gold
(10) 2001 Silver Eagle Coins (proof)
(240) 1/10 ounce Canadian Maple Leaf Coin
(200) Gold Bars, 1 ounce
(20) 2002 American Gold Eagle Coins
        (5) 1 ounce
        (5) 1/2 ounce
        (5) 1/4 ounce
        (5) 1/10 ounce

(16) 1998 American Gold Eagle Coins
        (4) 1 ounce
        (4) ½ ounce
        (4) 1/4 ounce
        (4) 1/10 ounce
(100) Republic Oesterreich 1 ounce schilling
(100) Silver Trade Unit 1 ounce

1  (40) coins: 2 container of 20
   (4) 2002 American Eagle (proof)
2  (1) 2001 U.S. Silver Dollar (proof)
   (8) Aussie Kookabara (1 kilo)
3  (1) 2 ounce Aussie Kangaroo Nugget
   (1) Aussie Koala 1 ounce
4  (10) coins, 2000 U.S. Mint Silver (proof)
   (200) $1.00 Peace Coins
5  (3) Silver Bars
       10.22 ounces
6      10.28 ounces
       10.25 ounces
7  (8) 10 Troy ounces Silver BMS
   (400) Franklin ½ dollars
8  (200) U.S. Silver dollars
   (100) Australian 1 ounce Gold Coin
9  (4) 2001 Silver American Eagle 1 ounce
   (16) American Gold Eagle
10 (1000) 1/10 ounce American Gold Eagle
   (10) American Eagle 1989-s
11 (200) Republic Oesterreich  2000 schilling 1 ounce gold
   (15) American Eagle 1987-s
12 (8) American Eagle 1 ounce silver
   (10) $1 Silver Coin 2000-P
13 (3) Gold Coin 1914-s
   (10) sets America Gold Eagle; $5, $10, $25, $50; 2002
14 (3) sets American Gold Eagle; $5, $10, $25, $50; 2000
   (200) Austrian 1 ounce Gold Coins
15 (49) 2 ounce Australian Nugget Gold Coins
   (600) 1/10 ounce American Gold Eagle
16 (240) 1/10 ounce Canadian Maple Leaf Gold
   (4) American Eagle 1 ounce Platinum
17 (3) Canadian Maple Leaf 1 ounce Platinum
   (2) Isle of Mann, 1 ounce Platinum
18 (1) Credit Suisse, 1 ounce Platinum
   (1) Eagle, 1 ounce Platinum
19 (260) 1/10 ounce Canada Maple Leaf Gold Coins

20 (Currency): $6440- $20 X 322
              $1364- $100 X 5, $5 X 1, $20 X 39, $10 X 39, $10 X 2,
21             $1.00 X 14
   (120) 1 ounce Krugerrand
22 (100) Canadian Maple Leaf Gold Coins 1 ounce
   (420) American Gold Eagle $50.00
23 (78) ½ ounce Canadian Maple Leaf
   (34) 1/4 ounce Canadian Maple Leaf
24 (50) Canadian Maple Leaf 1 ounce
   (12) American Gold Eagle ½ ounce
25 (12) American Gold Eagle 1 ounce
   (10) American Gold Eagle 1/4 ounce
26 (10) American Eagle 2/10 ounce
   (100) Canadian Maple Leaf 1 ounce

27

28                        ~~22~~
                          23

```
 1   (215) Krugerrand 1 ounce
     (180) Canadian Maple Leaf Golf Coins 1 ounce
 2   (90) American Gold Eagle Coins
     (120) American Gold Eagle
 3   (100) Canadian Maple Leaf 1 ounce
     (100) Krugerrand 1 ounce
 4   (100) Canadian Maple Leaf 1 ounce
     (47) Australian Nugget Gold Coins 1 ounce
 5   (1) 10 pesos coins with Segundo Muleio on it
     (3) 5 pesos coins with Estador Mexicana on it
 6   (3) boxes of Cash Link Electronic cash cards containing 349 cards
         in box1; 347 cards in box 2; and 287 cards in box 3
 7   (1) plastic container with 380 U.S. Silver Eagle 1 ounce
     (3) U.S. Mercury Dimes, BU, 1937,1939,1940
 8   (18) Silver dimes
     (1) Silver Unit coin
 9   (1) Silver Quarter 1892
     (2) pennies
10   (1) German Coin (Nazi) with a "2" on it
     (1) German Coin (Nazi) with a "5" on it
11   (1) e-Bullion Electronic cash card and cryptocard
         #6034.1101.4000.0603
12   (9) U.S. American Silver Eagle 2001
     (4) 2000 U.S. Mint Silver Proof Sets
13   (3) 2001 U.S. Mint American Buffalo Commemorative Coin Sets
         (proof)
14   (1) U.S. Silver Eagle, 1 ounce, with walking Liberty in Gold
     (2) 2000 U.S. Silver Eagle 1 ounce color enhanced by Pearth Mint
15   (14) 1999 Canada 1 ounce silver coins, Elizabeth II $5 dollars
     (1) 1985 Canada, 1 ounce Gold Coin, Elizabeth II
16   (1) 1999 Austria 1 ounce Gold Coin
     (1) Credit Suisse, 1 ounce gold Ignot
17   (1) 1999 Australian 1 ounce fold coin, Elizabeth II
     (5) 1997 U.S. Silver Eagle 1 ounce
18   (1) 2002 U.S. Silver Eagle 1 ounce
     (1) white plastic bucket containing 10,000 U.S. Silver Dimes,
19       face value $1,000
     (1) white plastic bucket containing 4,000 U.S. Silver Quarters,
20       face value $1,000

21   Property Seized From 2090 Baja Vista Way, Camarillo

22   (2) U.S. Silver Eagle 1 ounce

23   Computer Equipment
     (1)  eMac rack mount server, serial number QP34612MNP2 with one
24       Hitachi Deskstar IC35L180AVV207-1 180 GB SCSI hard drive,
         serial number IJ33802CZP0DA
25
     (1)  eMac xserve2 rack mount server, serial number QP61106YRTS
26       with one Maxtor 6L080M0 80 GB hard drive, serial number
         L226F8FG.
27

28                              23
                                24
```

(1)   eMac RAID rack mount server serial number QP611013U3G with seven Hitachi Deskstar # HDS725050KLAT80 500 GB SCSI  hard drives with serial number IX50800Q0TR8A

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Jeffrey W. Johnson.

The case number on all documents filed with the Court should read as follows:

**CV09- 1731 SVW (JWJx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY



**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| United States of America | $1,802,651.56 in Funds Seized from E-Bullion; and $5,017,021.50 and Various Items of Personal Property Seized from Goldfinger Coin& Bullion Inc. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| STEVEN R. WELK, Assistant United States Attorney<br>1400 United States Courthouse, 312 North Spring Street<br>Los Angeles, CA 90012, Telephone: (213) 894-6166, Facsimile: (213) 894-7177 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff  
☐ 2 U.S. Government Defendant  
☐ 3 Federal Question (U.S. Government Not a Party)  
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  
☐ 2 Removed from State Court  
☐ 3 Remanded from Appellate Court  
☐ 4 Reinstated or Reopened  
☐ 5 Transferred from another district (specify):  
☐ 6 Multi-District Litigation  
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No  ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
18 U.S.C. § 2254(a)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☑ 690 Other | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionally of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**  Case Number: **CV09-01731**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.



## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:**  Have any cases been previously filed in this court that are related to the present case?  ☐ No  ☑Yes
If yes, list case number(s): U.S. v. Fayed et al; CR 08-00224-PSG

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☑ A.  Arise from the same or closely related transactions, happenings, or events; or
         ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
         ☑ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
         ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX.  VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☑  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date March 11, 2009

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |